### James Hunt v. Edwin Sackett.

*Implied warranty of title: Exchange: Sale.* A warranty of title is to be implied from the contract, as much in the case of an exchange of horses then in the possession of those making the trade, as upon a sale; and this implied warranty is as much a part of the contract as if it had been express.

*Implied warranty of title: Action for breach: Affirming contract: Declaration: Implied contracts.* An action upon such contract for breach of the implied warranty of title would be an affirmance, and not a rescission of the contract, and no act in disaffirmance of the trade, such as tendering back the boot-money, or demanding the horse given in exchange, is necessary as a pre-requisite to bringing the action; but the declaration must count upon the contract itself, since it is this alone which creates the obligation, and no other or different contract can be implied while that is in force and the rights of the parties are dependent upon it.

HUNT *v.* SACKETT.

*Warranty of title : Chattel mortgage : Rescission of contract.* The taking from one's possession by virtue of a valid chattel mortgage, of property received in exchange on a horse trade, would, though the exchange had been executed, authorize a rescission of the contract.

*Exchange of chattels : Rescission of contract : Action for goods sold and delivered : Common counts.* Whether, upon a rescission of an executed contract of exchange, for a failure of title, and after an offer of restitution such as would place the adverse party in *statu quo*, an action for goods sold and delivered will lie, or whether the only admissible remedy is an action directly upon the contract of exchange, counting specially on the warranty,—the authorities are in conflict.

*Rescission of contract of exchange : Common counts : Ground of the action : Implied promises.* The ground upon which an action upon the common counts is sustained in such a case, where it is permitted at all, is that the contract of exchange being rescinded, there is then no longer any express contract existing, and the law will thereupon imply one to do that which the equities of the case demand under the conditions in which the rescission has left the parties.

*Express contract : Implied promise.* So long as an express contract remains in force none can be implied covering the same subject matter.

*Exchange of horses : Warranty of title : Failure of consideration : Boot-money : Defects of title.* One who has received money to boot on a trade of horses cannot, on failure of title to the horse he received in exchange, recover back the consideration, or the value of the horse he traded, on the ground of a total failure of consideration, so long as he retains the boot-money ; but the real nature of his right of action is the recovery of damages for a breach of the agreement implied in the trade, to be indemnified against failure or defect of title.

*Exchange of chattels : Implied warranty : Defect of title : Measure of damages.* Where the defect of title in property received in exchange, upon which a right of recovery is based, consists of a chattel mortgage upon that and other chattels, in the absence of any showing that such property had any of it been sold under the mortgage, or of the value of such other chattels, the proper measure of damages could in no form of action be the value of the property given in exchange.

*Submitted on briefs October 23. Decided January 6.*

Error to Wayne Circuit.

*This was an action brought by Sackett against Hunt in a justice's court, the plaintiff declaring upon all the common counts in assumpsit. The case was appealed to the circuit court and tried before a jury, the plaintiff recovering a judgment for one hundred and fifty dollars damages, and the costs of suit. The case is brought here by writ of error and bill of exceptions.

The evidence tended to show that plaintiff and defendant traded horses on the 29th of March, 1871, the plaintiff

* This statement of the case was prepared by Judge Christiancy.

giving defendant his horse and a yearling colt, for defendant's horse and ten dollars. Possession was mutually given, and the defendant paid the ten dollars. The defendant, however, objected in time to going into the proof of the particulars of the trade, under the declaration.

The plaintiff—under objection from defendant that no recovery could be had upon the common counts for a breach of warranty of title—testified that defendant said he had owned the horse (traded to plaintiff) three or four years.

Evidence was also given showing the value of the horse and colt received by defendant, and tending to show that the horse defendant let plaintiff have, was purchased by defendant of one Henry Duvall; that before this purchase, and while Duvall owned the horse, Nov. 1st, 1870, he, Duvall, had executed to Clarke and Hamilton a chattel mortgage on this horse, another horse, a double set of harness and a double wagon, to secure the payment of two hundred dollars and interest, by May 1st, 1871; which mortgage was duly filed in the office of the township clerk, March 11th, 1871; that this mortgage, on the 4th of March, 1871, was assigned to one Long, by an assignment executed in the name of Clarke and Hamilton; the instrument, however, as the evidence showed, being signed by Hamilton in the name of the firm, after, as the evidence tended to show, the firm had quit business and left the state; and defendant offered, but was not permitted, to show that the firm had become insolvent, had absconded, and was dissolved, before the assignment was made, but—under objection by defendant on the ground that the writing should be produced —Long testified that he had an agreement in writing from Clarke that the assignment might be made. It appeared on Long's cross-examination that a part of the consideration for the assignment of the mortgage, was an account against Hamilton, for liquor sold him by the glass.

It further appeared that in August, 1871 (until which time the plaintiff had kept the horse got of defendant), Long came with an officer and took the horse away on the

chattel mortgage; and it was also shown, under objection from defendant, that Long also took possession of the wagon and harness covered by the mortgage; but there was no evidence of the sale of the horse, wagon or harness under the mortgage, nor of the value of the wagon or harness.

The court, at the request of the plaintiff, charged the jury that if they should find " that the plaintiff exchanged a horse and colt with the defendant, for a horse and ten dollars in money, and that the horse he received was subsequently taken from him by virtue of a chattel mortgage executed by a former owner, then the plaintiff is entitled to maintain this action for goods sold and delivered, and your verdict should be for the value of the horse and colt, less the ten dollars he received in the trade.

"*Second*, That in order to maintain this action for goods sold and delivered, it is not necessary for the plaintiff to show that he returned, or offered to return, the ten dollars before bringing suit.

"*Third*, If the jury find that the chattel mortgage was recorded at the time of the trade, then it was a valid incumbrance as against the plaintiff, and he is entitled to a verdict.

"*Fourth*, If the jury find that the defendant traded the horse to the plaintiff as his own, knowing at the time of the Duvall mortgage, the plaintiff is entitled to recover."

*Chambers & McGrath* and *George H. Prentis*, for plaintiff in error.

*Edward Minock* and *F. A. Baker*, for defendant in error.

CHRISTIANCY, J.

It will not be necessary to discuss all the questions raised in this case.

The main question is, whether, under the circumstances which the evidence tended to show, the plaintiff, without rescinding the contract and placing, or offering to place,

the defendant in *statu quo*, was entitled to recover under the common *indebitatus* count, for goods sold and delivered, the value of the horse and colt, less the ten dollars he had received.

The horse received by the plaintiff in exchange being at the time in defendant's possession, there can be no doubt that a warranty of title on the part of the defendant was implied in the contract of exchange, as it would have been upon a sale; and the plaintiff might have sued upon that contract, of which the implied warranty was just as much a part as if it had been express; and in thus declaring he would be affirming and not rescinding the contract, and would not therefore be bound first to tender back the money he had received upon it, nor to demand the property he let the defendant have, nor to do any other act in disaffirmance of the contract. But to sustain such an action, it must be based upon the contract of exchange itself, of which the implied warranty is a part; as it is this only which creates the obligation, and no other or different contract can be implied while that is in force and the rights of the parties dependent upon it.

It is also, I think, clear enough that the existence of the chattel mortgage as an encumbrance upon the property, and the taking of the property from the possession of the plaintiff under it,—if the assignment was valid,—which we need not here discuss,—would, though the contract of exchange had been executed, have authorized the plaintiff to have rescinded the contract; and by returning, or offering to return, the money he had received, he would, according to the authorities in Massachusetts, Maryland, and Maine, and perhaps some other states (*Story on Sales, last ed., Sec. 421 and cases cited*), have had the right to sue, either upon the contract of exchange, or for goods sold and delivered; though according to the general current of authority in other states, he must sue and declare specially upon the warranty, when the contract has been executed so as

to pass the property.—*Story on Sales, ubi supra, and cases cited.*

But whenever the action can be maintained upon the common counts for goods sold and delivered, or to recover back the consideration on the ground that there has been a breach of warranty, it is upon the ground that the contract of sale or exchange being rescinded, there is then no express contract existing, and the law will imply one to pay the price, or what the goods are worth, according to the equities of the case arising upon the condition in which the parties are left upon such rescission. But while the original contract is in force, none can be implied.

And as to recovering back the consideration, or the value of the horse and colt, it must be remembered that here was not a total failure of consideration, even admitting the failure of title of the horse received by the plaintiff to have been total and complete, for he still had the ten dollars, and there was no defect of title to that. The defendant has not therefore failed, or refused *in toto* to perform every part of his contract, so as to authorize the plaintiff to treat it as rescinded, while he keeps part of the consideration.

So far as this was in the nature of a sale for cash, the defendant has performed his contract by payment. The duty which remained for the defendant to do, was not, under the contract, the payment of an agreed sum of money, but to keep the plaintiff indemnified against a failure or defect of title; and this is the real nature of the plaintiff's right of action, viz.: to recover damages for the breach of that portion of the defendant's contract.

But there is, as it seems to me, another reason why the judgment should be reversed. The contract was executed when made; the property in the horse vested in the plaintiff, subject, as was afterwards discovered, to a chattel mortgage upon this and other property for two hundred dollars. Admitting the due execution of a valid assignment of it to Long, and his seizure of the horse to be rightful, there is

no evidence that this horse, or the other mortgaged property taken by Long, was ever sold, nor any evidence of the value of the other property taken under the mortgage; there is nothing, therefore, which shows the real amount of the actual incumbrance upon the' horse, for the plaintiff had a right to redeem before Long took possession, and even within any reasonable time afterwards.—*Flanders v. Chamberlain, 24 Mich., 305; Lucking v. Wesson, 25 Mich., 443.* For aught that appears, the other property had been, or might be, sold for enough to pay the whole mortgage debt; and it is fairly to be inferred that it would pay a considerable part of it. True, the plaintiff might, as I have stated, have rescinded the contract on this ground. But he did not rescind. In no form of action, therefore, would the value of the horse and colt traded to defendant constitute the measure of damages, without showing that the real and actual incumbrance upon the horse was equal to or exceeded the value of the horse and colt received by the defendant. In other words, without showing the value or disposition of the other mortgaged property, or some ground of actual necessity for throwing the whole mortgage debt upon the horse the plaintiff had received, or a portion of it equal to the value of the horse and colt received by defendant.

The court therefore erred in charging that the value of horse and colt would be the measure of damages.

The judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.