## BYRNSIDE v. BURDETT.

Decided November 22, 1879.

1879
Special Term.

1. A warranty of title is to be implied from the contract, as much in the case of an exchange of horses then in the possession of those making the trade as upon a sale; and this implied warranty is as much a part of the contract as if it had been express.

2. In an action by a purchaser of goods against his vendor it is not necessary for the purchaser to show that he gave notice of the pending of the suit brought against him by the real owner of the property. His omission to give such notice will only prevent his recovering of the vendor any of the costs of that suit, and will throw the burden upon him of proving by evidence, other than the record of the former suit, that the vendor had no title to the property, at the time he sold it to him.

3. A warranty of title should only be implied with regard to sales of personal property when good faith requires it.

4. The possession of a vendor of chattels is equivalent to an affirmation of title. And in such case the vendor is to be held to an implied warranty of title, though nothing be said on the subject between the parties. But if the property sold be at the time of sale in the possession of a third person, and there is no affirmation or assertion of ownership, no warranty of title will be implied.

5. If however there be an affirmation of title when the vendor is not in possession, the vendor should be subject to the same liability as if he had the possession at the time.

6. A case where what purports to be a search-warrant was held void on its face, and also what purported to be a judgment of a justice' was held inadmissible as evidence. See opinion of the Court in this case.

*Supersedeas* to a judgment of the circuit court of the county of Putnam, rendered on the 28th day of October, 1875, in an action in said court then pending, wherein Richard Byrnside was plaintiff and Powell Burdett was defendant, allowed upon the petition of said Byrnside.

1879
Special Term.

Byrnside
v.
Burdett.

Hon. Joseph Smith, judge of the seventh judicial circuit rendered the judgment appealed from.

The facts of the case are fully stated in the opinion of the Court.

*James M. Laidley*, for plaintiff in error, relied on *Regina* v. *Finney*, 2 C. & K. (47 E. C. L. )

*Smith & Knight*, for defendant in error, cited the following authorities:

7 Rob. Pr. 151, 152 ; 2 Rand. 132 ; 2 Saunders 32, n. 1 ; 31 Barb. 540 ; 7 Cush. 166 ; 5 Wend. 535 ; 2 Rand 313 ; 7 Rob. Pr. 14, 15 ; *Id* 67 *et seq.* ; 10 W. Va. 250 ; 2 Gratt. 28 ; 8 W. Va. 584 ; *Id.* 515 ; 21 Gratt. 216 ; 7 W. Va. 348.

HAYMOND, JUDGE, delivered the opinion of the Court:

This is an action brought by the plaintiff against the defendant in the county of Putnam, to recover damages upon warranty of title of a horse traded by the defendant to the plaintiff in exchange for a horse of the plaintiff. The declaration contains three counts, the first of which claims $150.00 damages, and the second and third $200.00, each. There was a demurrer to the declaration and each count thereof filed by the defendant's counsel in the court below, but the demurrer to the declaration was overruled. The defendant's counsel have not claimed before us that the court below erred in any respect in overruling the said demurrer, and in fact the counsel for the defendant in their brief seem to admit impliedly, at least, that the circuit court

did not err in overruling the demurrer. Under these circumstances I have not felt called upon to examine the declaration with such care, as I would under other circumstances. But taking it for granted after examination that the declaration and each count thereof is good upon general demurrer, I pass on to a further statement and examination of the case upon other matters. It appears that on the 28th day of April, 1875, the said demurrer was overruled. And on the 26th day of October, 1875, the parties appeared in the said circuit court, by their attorneys, and thereupon came a jury of twelve good and lawful men tried and sworn to well and truly try the issue joined. The issue joined in the case was on the plea of not guilty. On the 27th of October, 1875, the jury by their verdict found for the defendant. And thereupon the plaintiff by his attorney moved the court to set aside the verdict of the jury and grant him a new trial on the ground that the said verdict was not warranted by the law and the evidence in the cause. Afterwards, on the 28th day of October, 1875, the said court overruled the plaintiff's said motion, to which ruling and judgment of the court the plaintiff excepted. And thereupon the court rendered judgment for the defendant upon the verdict of the jury. It also appears at the foot of said judgment that on the trial of the case the plaintiff, by his counsel, tendered two bills of exceptions to opinions of the court, which were received, signed and sealed and made a part of the record in the cause. By bill of exceptions number one, it appappears that the plaintiff, to sustain the issue on his part, introduced the record and proceedings before E. Griffith, a justice of the peace for Lincoln county, in the following words and figures, to-wit:

"M. M. Lawrence *personaly* appeared before me and made oath that he had a cream *colord* white horse *stold* in the month of November, 1871, by C. C. *Philaps* and ran off by A. Ball, and from *infumation* the said horse is in the *posesion* of R. Byrnside, *an* I *therefor* demand a State *warnt*

for the *horss* and R. Byrnside. This the 1st of March, 1872.

E. GRIFFITH, *J. P.*

"This is a true copy of the *affidavid* of M. M. Lawrence when he swore a State *warnt* for his *hors* and the *arrest* of R. Byrnside.

"This the 4th of May, 1872.

"E. GRIFFITH, *J. P.*

### *Warrant.*

"WEST VIRGINIA, LINCOLN COUNTY :

"*To the Constable of Duval Township :*

"Whereas, M. M. Lawrence, *Boon* county, hath this day *mad* complaint and information on oath before me, E. Griffith, a justice, that in the month of November 1871, in *Boon* county, one cream *collerd* white horse, white tail, *main,* glass eyes, white hoofs, was stolen of him, M. Lawrence, was feloneously taken stolen by C. C. *Philup,* carried away by A. G. Ball and he hath just *caus* to suspect and doth suspect that the said horse is in the *possesion* of R. Byrnsides : These are *therefore* to authorize you and require you in the name of the State of West Virginia, with necessary aid, to *inter* the *possesion* of the said R. Byrnsides and enter the stable in day time and *ther dilligently serch* for the said horse, and if the same be found upon such *surch,* that you bring the said horse, also the *boudy* of the said R. Byrnsides, before me or some other justice of the said county to be dealt with according to law.

"Given under my hand this the 1st of March, 1872.

"E. GRIFFITH,

"*Justice of Duval Township, Lincoln County, W. Va.*

"This is a true copy of the *warnt* to the best of my judgment.

"E. GRIFFITH, *J. P.*

"STATE of *We.*
vs.
R. BYRNSIDES.

"Judgment that M. M. Lawrence recover *off* of R.

Byrnsides the said *hors* and costs which *mounts* to $3.65.

"This the 2d March, 1872.

"E. GRIFFITH, *J. P.*

" R. Byrnsides *personly appear* before me, E. Griffith, and made *oat* the said *hors*, M. M. Lawrence recovered off of him a *stold hors* he got said *hors* from P. Burdett.

" Given under my hand the 2*th* day of March, 1872.

"E. GRIFFITH."

To the reading of which the defendant objected, but his objections were overruled by the court. The plaintiff then proved that he was arrested under the warrant aforesaid; that the horse was taken from his stable, and that he and the horse were taken the evening of the same day from plaintiff's house, in Putnam county, to the justice in Lincoln county. The plaintiff proved also that he bought in exchange for another horse the horse in controversy from the defendant; that the plaintiff was discharged by the justice, and that the horse, by the order of said justice, was delivered to the said Lawrence.

The defendant proved that he purchased said horse from Mr. Mynes, and that Mr. Mynes purchased him from Mr. Good, and that Good purchased said horse from Mr. Stowers. The defendant also proved that said Lawrence in the fall of 1870, admitted that said horse belonged to one Cope Philips. The defendant also proved that said Philips had sold said horse to Ball and Ball to Stowers. The defendant also proved that he lived only about two or two and a half miles from plaintiff. It was also proved that the plaintiff when arrested was taken by the constable in an opposite direction from the defendant's residence to the house of a justice in another county, Lincoln, and that he was tried on Saturday, the next day after he was arrested, and that the plaintiff notified the defendant on Monday morning after the judgment had been rendered against him, that said horse had been taken from him under the warrant aforesaid. It was also proven that the justice offered to give the plaintiff herein a new hearing within ten days after the judgment

aforesaid had been rendered, and that plaintiff declined to have judgment opened, stating that all he wanted was pay for his horse. It was also proven that the testimony before the justice warranted the judgment which he gave as to the ownership of the horse. It was also proven that the justice of Lincoln county, Griffith, told the plaintiff, Byrnside, when he was brought before him, that he had no right to try him on the warrant unless by his consent, and would send him back to his own county, Putnam, if he desired it; that Byrnside consented to the trial in Lincoln county, and after he was acquitted of the criminal charge in said warrant, he consented to the said justice to try on the same day the right of ownership of said horse between Lawrence and himself, without having any witnesses summoned on his own behalf; that the said justice asked Byrnside if he wanted a continuance of the case of the right of ownership in the horse, and that Byrnside said he did not. It was also proven that Byrnside gave no notice whatever to his vendor, Burdett, defendant in this case, of the proceedings against the said Byrnside by Lawrence to recover said horse.

The defendant also read in evidence the following deposition of I. S. Samuels, Esq., of Boone county:

" Question by L. P. Burdett—Do you know anything about a cream-colored horse said to have been Cope Philips's and now in controvery between the parties above mentioned?

" Answer by deponent—I know a cream-colored horse claimed by Cope Philips. Philips at one time offered to sell me the said horse in the presence of one Merriman Lawrence. Lawrence never claimed the horse in my presence.

" Question by plaintiff—Please state as near as you can he date when Philips offered to sell you the horse in question.

" Answer—I cannot recollect the date. I should think it was three or four years ago ; it may be more or less.

"Question by same—Do you not know that Merriman M. Lawrence, in February or March, 1872, obtained a warrant for recovering from the plaintiff the possession of the horse spoken of, and do you know how he afterwards acquired such title as enabled him to recover the possession of said horse?

"Answer—I know Lawrence had a suit with Phillips; I think for the recovery of the horse in controversy. The time of the suit I do not now recollect. What was the result, and what became of the suit, I do not know of my own knowledge.

"Question by same—Was not the suit you speak of brought by Lawrence against Philips, after the latter offered to sell you the horse in the presence of Lawrence?

"Answer—It was.

"Question by same—Did not Lawrence recover the horse in the suit you speak of, or did he not have the horse in his possession as his property?

"Answer—I do not know anything about it of my own knowledge.

"And further deponent says not.

"I. S. SAMUELS."

And this being all the evidence, the court, at the instance of the defendant gave the following instruction to the jury:

"To entitle the plaintiff to recover in this case against his vendor, he should prove either that he had been deprived of the property purchased by him of the defendant by the judgment of a competent tribunal, after having given notice to the defendant, his vendor, of the pendency of a suit or claim against him to recover the horse, or he must prove that the right and title of the party who recovered the property was better than his vendor's, and in either event the plaintiff is entitled to recover."

To which instruction the plaintiff objected, which objection was overruled by the court, and thereupon the plaintiff moved the court as follows:

"That as between the plaintiff and defendant, the judg-

ment of the justice, E. Griffith, Esq., is *prima facie* evidence at least of ownership in M. M. Lawrence of the horse in controversy." Which instruction the court refused to give, but told the jury that it was not for the court to determine the weight of evidence, but instructed the jury that the judgment was proper for them to consider and weigh with all the other evidence in the cause, and that it was with them to determine its weight. To which opinion of the court, giving the first named instruction, and refusing to give the ·last named instruction, the plaintiff excepts, and prays that these his exceptions may be signed and reserved to him. And thereupon the jury having considered of their verdict returned into court and found the issue for the defendant. Whereupon the plaintiff moved the court to set aside the verdict aforesaid and grant him a new trial, upon the ground that the said verdict was contrary to the law and evidence, which motion the court overruled. To which opinion of the court overruling said motion and refusing to set aside said verdict the plaintiff excepted, and prays that these his exceptions may be signed and reserved to him, which is accordingly done.

" J. SMITH, [Seal.]"

*Exception No. 2.*

" RICHARD BYRNSIDE }
  *v.*
POWELL BURDETT. }

" *Be it remembered*, That upon the trial of this case the plaintiff offered to read in evidence the following record of the proceedings and judgment of the circuit court of Lincoln county :

" STATE OF WEST VIRGINIA,
 "*Lincoln County, to-wit :*

" Pleas before the Judge of the Circuit Court of Lincoln county, at the court-house thereof on the —— day of ——, 1872.

" *Be it remembered*, That on the 25th day of March, ·

1879<br>Special Term.<br>——<br>Byrnside<br>v.<br>Burdett.

1872, came Richard Byrnside and sued out of the clerk's office of said court a writ in the following words and figures, to-wit:

"*Summons.*

" STATE OF WEST VIRGINIA :

" *To the Sheriff of Lincoln County greeting.*

" We command you that you summons Ephraim Griffith, Thomas King, M. M. Lawrence and Mandsville Pauley, if they be found within your bailiwick, to appear before the judge of our circuit court for said county of Lincoln, at rules to be held in the clerk's office thereof, on the first Monday in April next, to answer Richard Byrnside of trespass on the case ; damage $200.00. And have then there this writ.

" Witness, B. F. Curry, clerk of said court, at the court-house of said county, the 25th day of March, 1872, and in the ninth year of the State.

"B. F. CURRY, *Clerk.*"

"I, Floyd Wilkinson, special sheriff of Lincoln county, West Virginia, do solemnly affirm that I did serve the within writ on Ephraim Griffith, Thomas King and Manderville Pauley, and hereby make return of the same.

" Given under my hand this 3d day of April. 1872.

" FLOYD WILKINSON, *Special Sheriff.*

" Sworn to and subscribed before me, Eli F. Harmon, notary public for Lincoln county, West Virginia, this 3d day of April, 1872.

" ELI F. HARMON, *Notary Public.*"

And at rules held in the clerk's office of said court for the month of April, 1872, came the said Richard Byrnside and filed his declaration in the following words and figures, to-wit :

" STATE OF WEST VIRGINIA :

" *In the Circuit Court of said county.*

" Richard Byrnside complains of Ephraim Griffith,

Thomas King, M. M. Lawrence and Manderville Pauly, who have been duly summoned, &c., of a plea of trespass on the case, for this, to-wit, that heretofore, to-wit, on the first day of March, 1872, at the county aforesaid, the said plaintiff was the owner of a horse and possessed thereof ; that on the day and year aforesaid the plaintiff being so possessed and entitled to said horse, the said defendant then and there with force and arms the said horse of the price and value of $200.00, of the goods and chattels of the said Richard Byrnside then and there found, took, drove, rode and carried away, and other outrages and wrongs to the plaintiff then and there committed against the peace of the State, and to the damage of the plaintiff $200.00. And therefore he sues.

and on the same day, the common order was entered against all of the defendants except M. M. Lawrence.

And at rules held in said office for the month of May, 1872, the common order was confirmed against all the defendants except M. M. Lawrence, and writ of enquiry awarded.

"WEST VIRGINIA :

"At a circuit court held in and for the county of Lincoln, at the court-house of said county, beginning on the 15th day of May, 1872, there was an order made on the law side of said court in words and figures as follows, to-wit :

"RICHARD BURNSIDE, vs. EPHRAIM GIFFITH et als., T. O. C. and damages

"This day came the parties, by their attorneys, and the defendants, by their attorneys, say that they are not guilty in manner and form as the plaintiff in his declaration against them hath complained, and of this they put themselves upon the country, and the plaintiffs likewise. And it is agreed that both parties may give in evidence at the trial of this cause any matter which could be given in evidence under any special plea or pleas good in law ; and the trial of this cause is continued until the next term of this court."

Also at the October term, 1872, of the circuit court of Lincoln county there was an order made on the law side of said court in words and figures as follows, to-wit:

"RICHARD BYRNSIDE *vs.* EPHRAIM GRIFFITH, THOMAS J. KING AND MANDERVILLE PAULEY.—*T. O. C. and damages.*

"This day came the parties by their attorneys, and thereupon came a jury, to-wit: Daniel Elkins, Allen Vannater, Tilman Adkins, John A. King, Jas. A Hatfield, Peyton Spears, Presley Showans, Calvin Adkins, Stephen Paine, Frank Thompson and Aaron Martin, twelve good and lawful men, selected, tried and sworn to well and truly try the issue joined, and after having heard all the evidence adduced in the case, retired to consider of their verdict; after some time returned into court, and upon their oath say: "We, the jury, find for the defendants." Therefore it is considered by the court that the defendants recover of the plaintiff their costs about this suit in that behalf expended, including $10.00 as prescribed by statute.

"CLERK'S OFFICE, CIRCUIT COURT, }
Lincoln County, W. Va. }

"I, B. F. Curry, clerk of the circuit court, do hereby certify that the foregoing transcript of the proceedings in the case of Richard Byrnsides *v.* Ephraim Griffith *et als.,* heretofore tried in the circuit court of the county aforesaid, is a true copy from the records of this office.

"Given under my hand the 7th day of September, 1874.

"B. F. CURRY, *Clerk.*

"*By H. Hager Deputy.*"

Which motion of the plaintiff to read said record, the court overruled. To which ruling of the court the plaintiff excepted, &c., and the bill of exceptions is signed and scaled by the judge. To the final judgment of the circuit court rendered in favor of the defendants, upon the verdict of the jury the plaintiff obtained from one of the judges of this court a *supersedeas;* and it is now for this court to consider and determine whether there is error in

said judgment to the prejudice of the plaintiff for which said judgment should be reversed.

It will be observed that at the time of the proceedings before Justice Griffith were had, the Constitution of this State of 1863 was in force, the present Constitution of this State not having gone into effect until the 22d day of August, 1872. The 2d article of the Constitution of 1863, in the 3d section thereof (being the Bill of Rights) declares that " the right of the citizens to be secure in their houses, persons, papers and effects against unreasonable searches and seizures, shall not be violated. No warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons and things to be seized." The 1st section of chapter 155 of the Code of 1868 of this State provides that " If there be complaint, on oath, that personal property has been stolen, embezzled or obtained by false pretenses, and that it is believed to be concealed in a particular house, or other place, the justice to whom complaint is made, if satisfied that there is reasonable cause for such belief, shall issue a warrant to search such place for such property." The second section of said chapter is not relevant to this case, as it relates to searches for things of a character not relevant to this case. But the third section of said chapter provides that " Every search-warrant shall be directed to the sheriff of the county, or the constable of the township, in which the place to be searched may be, and shall command him to search the place designated, and seize such stolen property, or other things, if found, and bring the same, and the person in whose possession they are, before a justice or court having cognizance of the case. Such warrant may be executed either in the day or night." And the fourth section of same chapter provides that "If such warrant be executed by the seizure of such property, or any other of the things aforesaid, the same shall be safely kept, by the direction of such justice or court, to be used as evidence ; and as soon as may be afterwards,

90

1879
Special Term.

Byrnside
v.
Burdett.

such stolen or embezzled property shall be restored to its owner, and the other things specified aforesaid burnt, or otherwise destroyed under such direction."

The 130th section of chapter 226 of the Acts of the Legislature of 1872–3 provides that "Every justice shall keep a book denominated a 'docket' to be furnished at the expense of the county, and used exclusively for entering therein his judicial proceedings." The 135th section of same chapter provides that whenever it is necessary to prove a judgment or other proceeding had before a justice, or any process issued by him, or the return thereof, or any order made by him in a suit, the docket in which it is entered, or a transcript thereof certified by him or his successor in office or the person lawfully having the custody of such docket, shall be evidence of the same, but shall not be conclusive, if errors or omissions be shown. The 136th, 137th and 138th sections of same chapter have some bearing on the subject of the said 135th section, but I deem it unnecessary to quote them in this case.

What is claimed to be the affidavit of M. M. Lawrence, upon which justice Griffith issued his warrant, does not state in what county the horse was stolen nor does it state that Byrnside, the plaintiff, stole the same, but it does state in substance that the horse was stolen in November, 1871, by C. C. "Philups" and ran off by A. Ball, and from information the said horse is in the possession of R. Byrnside, and that he therefore demands a warrant for the horse and R. Byrnside. The affidavit does not state in what county Byrnside resides, or is, or county or place in which Byrnside or the horse is, nor does it describe any place to be searched, or allege that the horse is concealed in any place, nor does it charge Byrnside with any felony or misdemeanor. Surely it cannot be claimed that this affidavit, if such it can be called, is sufficient to authorize a justice to issue a search-warrant under the provisions of the 3d section of the Bill of Rights or the statute of the Code of 1868, to which

I have referred. It does not pretend to state in substance or otherwise that the horse " is believed to be concealed in a particular house or other place." Still the justice states it is a true copy of the affidavit made by said Lawrence when he swore a state warrant for his horse and the arrest of R. Byrnside. But the justice in his warrant, as it is called, certifies that said Lawrence made complaint and information on oath before him that in the month of November, 1871, in " Boon" county the said horse was stolen of him, Lawrence, by C. C. " Philups," carried away by A. G. Ball and that he has just cause to suspect that the said horse is in the possession of said Byrnside. The justice however does not pretend in his warrant that complaint or information was made before him on oath that the horse was stolen by Byrnside or that the horse was concealed in any " particular house or other place," but simply that said Lawrence hath just cause to suspect and doth suspect it is in the possession of R. Byrnside.

I apprehend there can be no doubt that the complaint on oath of said Lawrence as certified in the warrant is wholly insufficient to authorize the issuing of a search-warrant for said horse or a criminal warrant against Byrnside for any criminal offense whatsoever, under the Constitution and statutes to which I have referred. Still the said justice in his said warrant says: " These are therefore to authorize you and require you, &c., with necessary aid, to " inter the possesion " and " inter the stable in day-time and there diligently search" for the said horse and if the same be found upon such search that you bring the said horse also the body of said Byrnside before me or some other justice, &c. What possession of the said Byrnside is the constable directed to enter, and in what county or township, or whose stable, and in what township or county is the constable commanded to enter in the day-time and make search for said horse, the warrant does not say with any certainty whatever.

It is so manifest that said warrant cannot with any

propriety be called a search-warrant or warrant for any criminal offense against Byrnside, that I deem it unnecessary to remark further upon it, except to say that as a search warrant or warrant against Byrnside for any offense, it is merely void upon its face under the third section of the Bill of Rights and the statutes in the Code of 1868, which I have cited. And yet the justice says at the bottom of the warrant, or doubtless meant to say, that it is a true copy of the warrant to the best of his judgment. What purports to be the judgment of the justice rendered on the 2d day of March, 1872, that M. M. Lawrence recover off of R. Byrnsides the said horse and costs to the amount of $3.65 is not certified to be a transcript, nor is it sufficiently shown to be the original judgment entered by the justice ; and it is clear to my mind that is not, and cannot be called a judgment of a justice rendered in a legal proceeding. What purports to be the affidavit of said Byrnside, made before said justice on the 2d day of March, 1872, does not appear to be a copy, nor is it shown to be the original. But I cannot see that the said affidavit, if such it may properly be called, was or should have been admitted as evidence in in this cause before the jury for any purpose.

Under the views I have expressed the affidavit and warrant of the justice and the so-called judgment of the justice were each and all illegal evidence and should have been rejected by the court, especially so when objected to by the defendant's attorney. But the court notwithstanding said objection overruled the same and permitted them all to go to the jury.

It appears by the evidence in the cause that, at the time said so-called warrant was issued by the justice and at the time the complaint was made on oath upon which it purports to have been issued, said Byrnside resided in the county of Putnam, and had said horse there in his possession honestly and without concealment, so far as appears by the record. It is true that it appears that the plaintiff bought, in exchange for another horse,

1879
Special Term.

Byrnside
v
Burdett.

the horse in controversy from the defendant, but he failed to give any evidence to the jury tending to prove the value of the horse he traded to the defendant for the horse in controversy, and also failed to give any evidence before the jury tending to prove the value of the horse in controversy. He also failed to give any evidence to the jury tending to prove directly that the horse in controversy was in the possession of the defendant, at the time the plaintiff traded for him; but perhaps by a strained construction of the facts proved this fact might be inferred. No evidence was given to the jury tending to prove that the defendant expressly warranted, affirmed or asserted that he had good title to the horse in controversy.

In the 2d Am. ed. of Benjamin on Sales, it is said at §641, pp. 594 and 595, that "in America, the distinction between goods in possession of the vendor and those not not in possession, so decisively repudiated by Buller, J., in *Paisley* v. *Freeman*, 3 T. R. 58, and by the judges in *Eichholz* v. *Bannister*, 17 C. B. N. S., §708, and in *Mosly* v. *Attenborough*, 3 Ex. 500, seems to be fully upheld; and the rule there is, that as to goods in possession of the vendor there is an implied warranty of title, but when the goods sold are in possession of a third party at the time of the sale, there is no such warranty and the vendor buys at his peril. And in the note of the learned editor of the last edition of Story on Sales, (3d ed. p. 459), it is said that "this distinction has now become so deeply rooted in the decisions of courts, in the *dicta* of judges, and in the conclusions of the learned authors and commentators, that even if it were shown to be misconceived in its origin, it could not at this day be easily eradicated. And Kent sustains this view of the law, 2 vol. Kent, p. 478. See the numerous authorities cited in notes (*i*) and K. in Benjamin on Sales in support and in explanation of the text quoted from his said work.

Syllabus 4.

A warranty of the title is to be implied from the con-

Syllabus 1.

1879
Special Term.

Byrnside
v.
Burdett.

tract, as much in the case of an exchange of articles then in the possession of those making the trade as upon a sale ; and this implied warranty is as much a part of the contract as if it had been express. *Hunt* v. *Sacket*, 31 Mich. 18 ; *Patee* v. *Pelton*, 48 Vt. 182. In the case of *McCoy & Quackenbosh* v. *Archer*, 3 Barb. 323, it was held that " The maxim, with regard to sales of personal property, is *fides servanda*; and if there be no express contract of warranty, general rules of implication should be adopted with this maxim constantly in view. A warranty of title should only be implied when good faith requires it. The possession of a vendor of chattels is equivalent to an affirmation of title. And in such case the vendor is to be held to an implied warranty; though nothing be said on the subject between the parties. But if the property sold be, at the time of sale, in the possession of a third person, and there be no affirmation or assertion of ownership no warranty of title will be implied. If however there be an affirmation of title where the vendor is not in possession. the vender should be subjected to the same liability as if he had the possession of the property."

Syllabus 3.

Syllabus 4.

Syllabus 5.

The plaintiff failed to give evidence to the jury tending to show that the defendant had not the title to the horse in question when he traded it to the plaintiff, and he also failed to give evidence to the jury tending to prove that he notified the defendant of any pending proceeding against him by said Lawrence to recover the horse in question from him before said justice Griffith, although the evidence shows clearly that he resided within two miles of the defendant, and had ample opportunity to do so if he had so desired. Plaintiff also failed to make any defense to the claim of said Lawrence to said horse by summoning or offering any witnesses before the justice—plaintiff refused to have the judgment opened and said all he wanted was his money for the horse. He was told by the justice that he had no jurisdiction to try the case, and yet he voluntarily consented that he might try the right of property in the

Syllabus 2.

horse without the knowledge or consent of the defendant, and without any defense on his part. No sufficient foundation is laid in the case to prove by parol testimony the judgment of the justice as to the right of property in the horse in question, if it be allowable in any case and especially under such circumstances as appear in this case.

In the case of *Burt* v. *Dewey*, 31 Barb. 540, it was held that, " In an action by a purchaser of goods, against the vendor, for a breach of the implied warranty of title, on the ground that the goods belonged to another person at the time of sale, and that the latter has recovered a judgment against the plaintiff for converting the same, the plaintiff need not prove that he has *paid* said judgment. Nor is it necessary for him to show that he gave his vendor notice of the suit brought against him by the real owner of the property. His omission to give such notice will only prevent his recovering of the vendor any of the costs of that suit, and will throw the burden upon him of proving by evidence other than the record of the former suit, that the vendor had no title to the property at the time he sold it to him."

In the case of *Armstrong* v. *Percy*, 5 Wend. 535, it was held that " the *measure of damages* in an action brought for a breach of implied *warranty of title* in the sale of a horse is the *price* paid, the interest thereon, and the costs recovered against the purchaser or his vendee in case of a suit by the owner and notice to the vendor ; the costs of the defense are not recoverable." See as bearing on this subject *Reggio, et al*, v. *Dominico Braggiotti, et al*, 7 Cush. 166. In the last named case which is not exactly similar to that in 5 Wend. in its nature, though perhaps somewhat similar in principle, Shaw, C. J., said, at page 170, " But still, the prevalence of authority in England is, that a second sale is evidence though not conclusive of the value, and admissible simply as one mode of ascertaining it. * * As they gave notice to the defendants of the pendency of

the first action, they are entitled to recover their taxable costs. See *Coolidge* v. *Bingham*, 5 Metc. 68. But the counsel fees cannot be allowed." See also 7th vol. ·Robinson's Practice, pp. 150, 151 and 152. It is settled in Kentucky that an implied warranty of title to goods is not of the character which requires a recovery of the goods by the right owner before an action can be maintained by the purchaser; but is in the nature of an undertaking on the part of the seller that the commodity he sells is his own; and that in an action upon such an undertaking it is sufficient breach to allege that the property belongs to some other. *Payne* v. *Redden*, 4 Bibb 304; *Scott* v. *Scott's adm'r*, 2 A. K. Marshall 217; *Chancellor* v. *Wiggins*, 4 B. Mon. 201. But see Story ·on Sales to the contrary, §209, 2d ed.

. Under the circumstances of this case, authorities cited bearing thereon, and the views I have expressed, it seems to me that the court committed no error in giving the instructions to the jury which it did, at the instance of the defendant. Nor do I think the court erred in refusing in this case to give the instruction asked by the plaintiff. Nor do I think the court erred to the prejudice of the plaintiff in refusing to give said instruction asked by the plaintiff and then giving the last instruction to the jury which it did give. I think it is manifest that in so far as there may be or is any error in the last named instruction under the circumstances of this case, it is in favor of the plaintiff and not to his prejudice. It seems to me from this whole case that it may well be said and concluded that the plaintiff voluntarily delivered the horse in controversy to said Lawrence. It is true the court certifies that the testimony before the justice warranted the judgment which he gave as to the ownership of the horse. That might be true, if there was such a judgment legally rendered and properly authenticated or proven to authorize it to be given in evidence; still that might be all true, and yet the title of the defendant to the horse be good at the time he traded it to the plaintiff

and defendant might have established that fact, if he had had an opportunity given him by notice of the proceeding before the justice. But leaving this out of view, evidence at the trial of this cause, proving that the evidence before the justice authorized his so-called judgment as to the ownership of the horse, was irrelevant and entitled to no weight. There are facts and evidence in the cause that tend strongly to prove that the horse in question was in fact the property of the defendant at the time he traded it to the plaintiff. For the foregoing reasons it seems to me that the court did not err to the prejudice of the plaintiff in refusing to set aside the verdict of the jury and grant a new trial.

I see no error in the ruling of the court as set forth in plaintiff's bill of exceptions number two aforesaid. There is nothing appearing in the record tending to show the relevancy to this case of the record of the proceedings and judgment in the case in said last named bill of exceptions mentioned which the court rejected as evidence. I deem it unnecessary to remark further on said bill of exceptions number two. There may be some doubts as to the jurisdiction of this Court in this case upon the question of the actual amount in controversy; but as the question has not been raised or discussed by the counsel on either side, and my mind is not clear against the jurisdiction from the whole case, I have not deemed it necessary to enquire further into that subject, especially as there is no error in the judgment of the circuit court to the prejudice of the plaintiff.

For the foregoing reasons the final judgment of the circuit court of the county of Putnam, rendered on the 28th day of October, 1875, must be affirmed with costs to the defendant in error against the plaintiff in error, and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.