HUNTINGTON and MUMFORD *against* HAVENS and others.

A general recital in a deed does not conclude a party, though the recital of a particular fact may estop him.

A recital cannot control the plain words in the granting part of a deed.

As where a deed of assignment by a debtor in trust for his creditor, recited that the debtor was desirous to convey his property, to secure three of his creditors named, in full, and the residue for the benefit of his other creditors; and in the body of the deed, the assignment was expressed to be in trust, to pay and satisfy those three creditors and three others named, and the surplus to be divided among his other creditors : *Held*, that the three creditors named in the recital were only entitled to be paid rateably with the other three creditors, in proportion to their demands, out of the proceeds of the property so assigned.

THE bill, dated *March* 13, 1820, stated, that on the 16th *December 20.* of *June*, 1819, *Frederick Jenkins* and *Matthew Jenkins* became insolvent. That the plaintiffs were their confidential creditors to a large amount, which was specified; that the defendants also claimed to be confidential creditors. That *Frederick* and *Matthew Jenkins* being desirous first to pay their confidential creditors, and then such other creditors as should come in and accept the residue in satisfaction, did, on the 17th *June*, 1819, execute and deliver to the three defendants, *P. Havens, J. Lovett,* and *J. C. Coddington,* first named, an indenture tripartite, which was set forth in the bill, and the material parts of which are stated in the opinion delivered by the Court. That it was the original intention of the parties to the said indenture, that the plaintiffs and five defendants should be placed on an equal footing, with regard to the payment of their debts. That on the 19th *June*, 1819, for the purpose of further securing their confidential creditors, another indenture was executed between *Frederick Jenkins* of the one part, and the three defendants first named of the other part, reciting the former

1820.

HUNTINGTON
v.
HAVENS.

indenture, and that the grantors were desirous of securing to the plaintiffs and defendants a full indemnity, &c. That these indentures were executed by the parties, and under them the three defendants first named had collected debts, and taken possession of the property assigned, and converted it into money : that the three defendants had paid the defendant *Coddington* his dividend of the proceeds, on the principle of an equal distribution, and had, in various letters, recognized the right of all the confidential creditors named, parties to the suit, to come in and receive equal dividends, according to their respective claims. But that the three defendants first named, since, and now pretend that they are entitled to priority of payment, and that the plaintiffs were not entitled to payment, until the four first defendants were satisfied. That those claims are sufficient to absorb all the property assigned. That if the indentures will bear the construction set up by the defendants, it has originated in a *mistake*, which ought to be rectified : *Prayer* that an account be taken of the real and personal estate so assigned, and of the proceeds received by the three first named defendants ; that the same be paid into Court, or some proper person be appointed to receive the same ; and that the plaintiffs be paid out of the same their just demands, &c.

The defendants having put in their answers, proofs were taken in the cause, and several witnesses examined for both parties.

*G. Griffin* and *S. Jones*, for the plaintiffs. They cited 1 *Ridgeway's P. C.* 384. 449. 461. 3. *Ch. Cas.* 101. *Shep. Touchst. tit. Deeds.* 2 *Johns. Ch. Rep.* 222. *Cowper*, 319.

*Wells* and *T. A. Emmet*, contra. They cited *Willes' Rep.* 9.

THE CHANCELLOR. The point in controversy in this case is, whether the plaintiffs are not entitled, under the assignments of the 17th and 19th of *June*, 1819, to an equal participation with the defendants, in the proceeds of the assignments.

On a careful perusal of the deeds, and of the proof which has been furnished in the cause, I cannot entertain a doubt, either as to the true construction of the deeds, or as to the real intention of the parties to them, even if that intention was to be deduced from testimony *dehors* the deeds.

The indenture of the 17th of *June*, 1819, was between *Frederick* and *Matthew Jenkins*, of the first part, the creditors mentioned in the schedule B, annexed to the deed, and who should become parties to the deed, by signing and sealing the same, upon the terms and within the time mentioned therein, of the second part, and the defendants, *Havens, Lovett*, and *J. J. Coddington*, of the third part. The recitals to this deed stated, that *Frederick* and *Matthew Jenkins* had failed, and that they were " indebted to the parties of the second part, in considerable sums, and in large sums to the parties of the third part." " And they were willing and desirous to convey their property, (designated in the schedule A, annexed,) in trust, to secure the parties of the third part, to the full amount of their demands and responsibilities, and to divide the residue or surplus for the benefit of the parties as afterwards expressed." The deed then grants, conveys, and assigns, to the parties of the third part, the property in schedule A, in trust, to sell the same and convert it into money, and collect the debts, and then, after deducting all necessary expenses, &c. " to pay to *Philetus Havens, James Lovett, J. & J. Coddington, Gurdon S. Mumford, Benjamin Huntington*, and *Richard Lambert*, such sums of money as the said parties of the first part may owe to them respectively, or as may be necessary to indemnify them, or either of them, against any responsibilities or assumptions

whatsoever, which either of them have made, or come un-
der for, or on account of the said parties of the first part."
The deed then proceeds, "and in the third place, upon the
further trust out of the surplus or remainder of the said
moneys, to make division thereof among *the other credi-
tors* of the said parties of the first part, who shall execute
the deed within the time, &c. equally in proportion to their
debts," &c.

This deed was signed and sealed not only by the grant-
ors, but by all the defendants, except *Joseph Coddington*,
and also by the plaintiffs.

After so clear a manifestation of the specific trusts, and
of the preference given to the parties to this suit, *by name*,
over the general creditors, and of the equality which is pre-
served between these parties, there seems to be no room for
the presumption set up by the defendants, that they are to
be paid to the full amount of their demands, in preference
to the plaintiffs, and in exclusion of the plaintiffs, if the trust
property should prove, as it has proved, to be insufficient.
A general recital in a deed will not conclude a party, though
a recital of a particular fact may estop. (*Co. Litt.* 352. *b.*
*Roll. Abr.* p. 872.    *Willes' Rep.* 9.)    The recital in this
deed is general and loose, and by no means to be consider-
ed as necessarily repugnant to the granting part and to the
declared trusts.    If the plaintiffs were to be excluded from
the benefit of the clause giving to them and the defendants
a priority to the general creditors, they would be excluded
altogether from the provisions of the deed, as to the surplus,
for that was to be divided rateably "among the other cre-
ditors," which plainly excluded those which had been named.
The plaintiffs are put upon an equality with the defendants,
and there is no distinction made, or which can be deduced
from the trust, or declared in their favour.    If the recital in
the deed be in any respect repugnant to this equity, as be-
tween the parties to this suit, it cannot be permitted to con-

trol the operation of the deed. This is a well settled rule of construction, and there never was a case in which a recital controlled the plain words of the granting part of a deed.

1820.

HUNTINGTON
v.
HAVENS.

In *Bath* and *Montague's case*, (3 *Ch. Cas.* 101.) Lord Ch. J. *Holt* very fully declares this rule : " This deed," says he, " doth say it was made and intended to confirm the will, and yet makes several recitals and limitations contrary to it. Why, suppose it were, that it did recite the will truly, and said the will disposed of the estate so and so, and then adds, that it was made to confirm the will, but yet disposeth of the estate quite otherwise than the will doth, shall this avoid the deed in equity, or make it to have another consideration than it else would have? The reciting part of a deed is not at all a necessary part either in law or equity. It may be made use of to explain a doubt of the intention or meaning of the parties, but it hath no effect of operation. But when it comes to limit the estate, there the deed is to have its effect according to what limitations are therein set forth."

It is to be observed, that Lord *Holt* spoke in this manner while sitting in Chancery, and the Lord Keeper affirmed what he said, and observed, that " recitals in a deed are not made the measure of the limitations in it."

The defendants, by becoming parties to this deed, (and they admit they did about the day of the date of it,) are presumed to have read it, and to have acceded to the terms of it ; and there is a remarkable circumstance appearing upon the face of the deed, that must have fixed their attention. The name of the plaintiff *Mumford* is interlined in that part of the deed in which he is declared to be one of the *cestui que trusts* to be first paid, and this interlineation is duly noticed by the subscribing witness. The defendants have therefore emphatically recognized the deed, according to its obvious and legal operation, and admitted the plaintiffs to be equal sharers with them in the privilege conferred. If there was any agreement between them and the grantors, that they were to be *exclusively* preferred, the plaintiffs were

no parties to that agreement, and are not to be affected in their rights by a transaction *inter alios*. But there is no evidence of any such agreement, and the defendants appeared always to have admitted the equal rights of the plaintiffs, until they received the advice of counsel as to the effect of the recital.

The defendants admit, that the second deed of assignment to the defendants, *Havens, · Lovett,* and *J. J. Coddington,* was executed on the 19th of *June,* 1819, " for the purpose of further securing the persons therein named as confidential creditors." And this assignment refers to the former one, and recites that *F. Jenkins* was " desirous to secure to the said *Philetus Havens, James Lovett,* the firm of *J. & J. Coddington, Gurdon S. Mumford, Benjamin Huntington,* and *Richard Lambert,* a full indemnity against any payments which they, or either of them, may be subjected to, by reason of debts owing, or responsibilities assumed, by them, or either of them, for or on account of *F. Jenkins* and *Matthew Jenkins,* in case the property and estate assigned by the said indenture should be insufficient for that purpose." This second deed, taken in connexion with the other, shows, demonstrably, its meaning and intention to have been conformably to the construction which has been given to it. And if we resort to the evidence which has been produced *dehors* the deeds, it is proved most decidedly by the testimony of *Frederick Jenkins,* and of *Lawrence,* who drew the former deed, that the intention, in the view and understanding of all the parties to it, was to place the plaintiffs on the same equality with the defendants, and that they were to be equally entitled to be preferred as confidential creditors.

I shall accordingly declare that they are entitled to receive from the defendants, who were the trustees in the deeds, their equal and rateable proportions with the defendants of the property assigned, and that a reference be had to take and state an account of the estate assigned, and of

the proceeds which have or might have come to the hands of the trustees, and after making all just allowances, that the amount of the dividends rateably due to the plaintiffs, and arising from the balance to be ascertained, be stated.