## McShirley et al. *v.* Birt et al.

Legatees.—*When Liable for Testator's Debts.*—A. mortgaged two tracts of land to the State of Indiana to secure a loan from the college fund. Subsequently both tracts were owned by B., who conveyed one tract to C. by warranty deed, and later sold the residue to D., it being stipulated in the deed that D., as a part of the consideration, should pay the college fund mortgage. D. sold to E. and E. to F., each purchaser in turn agreeing to assume and pay said mortgage, and F. also executing to E. a mortgage for part of the purchase-money. Neither of them paid it, and both tracts were eventually sold

McShirley *et al. v.* Birt *et al.*

by the Auditor of State to satisfy A.'s mortgage, G. being the purchaser. The sale produced a surplus, which remained in the auditor's hands. H. afterward purchased of G., to whom H. represented that he was purchasing for the benefit of the parties secured by the mortgage of F., that part of the land charged in said several deeds with the payment of the mortgage. The widow and children of B., who were also his legatees, paid to C. a certain sum which he had paid to G. in redemption of the piece of land he had purchased from B., and then sued D., E., F., G., and H. and the Auditor of State, praying in their complaint that the surplus in the hands of the said auditor might be paid to them, and that the residue might be charged on the land purchased by H. of G.

*Held,* that the complaint was bad for failing to show that the plaintiffs had received assets from B.'s estate. If they received none, they were in no way liable for B.'s debts, and their payment to C. was voluntary and gave them no right of action.

MORTGAGE TO THE STATE.—*Purchaser's Rights.*—The purchaser of land mortgaged to the State for the benefit of the college fund takes under the mortgage, and is not affected by equities between purchasers of the land subsequent to such mortgage.

VENDOR AND PURCHASER.—*Notice.*—A purchaser in good faith, without notice, can convey to his grantee a good title, although the latter may have notice of outstanding equities in favor of other parties.

From the Howard Circuit Court.

*J. H. Kroh, M. Bell,* and *A. Bell,* for appellants.

*R. Vaile, N. Van Horn,* and *J. W. Robinson,* for appellees.

DOWNEY, C. J.—This action was by the appellees against the appellants, McShirley, Jacob H. Trick and his wife, James Scott, Eli Shockley, John C. Shoemaker, and David S. Caylor, and there was judgment for the plaintiffs. The first question to be considered is as to the sufficiency of the complaint, to which a demurrer was filed by the defendants and overruled by the court, an exception having been taken, and the ruling assigned as error in this court. The facts alleged in the complaint are, in substance, the following : That on the 6th day of April, 1855, Greenup S. Pitman was the owner of the east half and the south-west quarter of the south-east quarter of section seventeen, township twenty-four, range four east, and on that day mortgaged the same to the State of Indiana to secure a loan of five hundred dollars, borrowed of the college funds of the State; that afterward on the 31st

day of March, 1859, said lands were owned by one Levin Birt, but how he became such owner is not stated; and that he on that day, for a valuable consideration, sold the said south-west quarter of said quarter section, containing thirty-nine acres, to one James R. Caldwell, giving him a warranty deed therefor, which was signed by the plaintiff Hypatia Birt, the wife of said Levin Birt; that on the 25th day of January, 1861, said Birt and wife sold and conveyed to William J. McShirley, one of the defendants, the east half of said quarter section, containing eighty acres, and that it was stipulated in the deed that said McShirley should pay the said mortgage to the State, principal and interest, as a part of the consideration for said eighty acres; that said McShirley, on the 19th day of December, 1864, sold and conveyed the said eighty acres of said land to the defendant David S. Caylor, the said Caylor also agreeing to pay said mortgage as part of the price of said land; that Caylor sold and conveyed said eighty acres to Jacob H. Trick, he also agreeing to pay said mortgage, and at the same time executing to Caylor a mortgage on said eighty acres, to secure a balance of the purchase-money of about twelve hundred dollars. It is then alleged that neither McShirley, Caylor, nor Trick paid any part of the principal of said mortgage, and that said Trick suffered the said real estate so mortgaged to be sold, for the non-payment of interest, by the Auditor of State, and that it was purchased by one Hosbrook for one thousand dollars, and it was afterward duly conveyed to him by the governor of the State of Indiana. The plaintiffs allege that neither they nor Caldwell had any notice of the default in the payment of said interest or of the sale of said lands until within the last fifteen days, and after the time for redemption thereof had elapsed, and the deed to said Hosbrook had been recorded. They further charge that after the execution of the mortgage by Trick to Caylor, Caylor desiring to sell a part or all of the notes secured thereby procured his father-in-law, the said Eli Shockley, to indorse a portion of said notes, and Caylor sold and transferred the

same; and after the sale of said land by the Auditor of State became known, and while these plaintiffs were endeavoring to procure an injunction enjoining said Hosbrook from conveying the same to parties in the interest of said Trick and Caylor, the said Eli Shockley, with a full knowledge that said eighty-acre tract had been bound for the payment of said mortgage, and of the equitable claim of the said James R. Caldwell, and of the plaintiffs upon said land for the cost of the redemption of said thirty-nine acres, knowing that the said eighty acres had been, by the several owners, pledged for the payment of the whole of the said mortgage, but combining and confederating with said Caylor and the defendant James Scott, who claims to and does own a part of the notes of said Trick, and who, it is believed, furnished a part of the money with which to do so, he, the said Eli Shockley, on the 25th day of March, 1871, redeemed said land from said Hosbrook and took a quitclaim deed for the same for the sum of one thousand dollars, the said land at the time being of the value of thirty-five hundred dollars, he, the said Shockley, then and there representing to the said Hosbrook that he was purchasing the said land in the interest of the parties secured by the mortgage aforesaid; all of which acts of said Shockley and said Scott were done with intent to cheat and defraud the plaintiffs out of their equitable claim against the said land for the cost of the redemption of said thirty-nine acres of land. They further show that said Caldwell was compelled to pay to said Hosbrook for the quitclaim to said thirty-nine acres the sum of seven hundred and twenty-five dollars, which sum the said plaintiffs, as legatees of said Birt, being his widow and children, were compelled to and have paid, or secured to be paid, to said Caldwell by virtue of the warranty of the title aforesaid, and they now seek to make the parties who are legally and equitably liable reimburse the amount to the plaintiffs. They further show that there is on deposit, in the hands of said defendant John C. Shoemaker, Auditor of State, the sum of three hundred and

eighty-two dollars and sixty-four cents, the overplus of said sale after payment of said mortgage, costs, etc., to all of which the plaintiffs are entitled, as the same is justly due them, and said Trick and wife are wholly insolvent. It is further stated that McShirley, Caylor, and Trick are all insolvent, and that unless said eighty acres of land shall be held for the balance of the costs of redemption of the thirty-nine acres, the plaintiffs will lose the same, etc. They further state that they are informed that Trick has conveyed said eighty acres of land to his wife for the consideration of love and affection, and that he or she is now trying to procure from the Auditor of State the two-thirds of said overplus, to which they set up claim.

They pray that said sum of three hundred and eighty-two dollars and sixty-four cents be ordered to be paid to them by the Auditor of State; that Trick and wife be forever enjoined from setting up any claim thereto; for judgment against said McShirley, Caylor, and Trick for the amount of the balance to redeem the said land after the application of the amount in the hands of Shoemaker, as such auditor; and that, on default of the payment thereof, said east half of said south-east quarter, etc., be decreed to be sold for the payment to the plaintiffs of the amount of any balance that may be found to have been paid by them in the redemption of said thirty-nine acres to said Caldwell, over and above the amount of said overplus in the hands of the Auditor of State. They also pray for a restraining order, etc. Copies of the deeds referred to in the complaint are made part thereof and filed therewith.

The rule established or recognized in this court is, that when an owner of real estate has mortgaged several tracts of land in the same mortgage, and afterward sells and conveys the tracts of land embraced in the mortgage to different persons, the lands are liable to be sold on the mortgage for the payment of the mortgage debt, in the inverse order of their conveyance by the mortgagor. *Aiken* v. *Bruen,* 21 Ind. 137, and cases cited.

McShirley *et al. v.* Birt *et al.*

Under this rule, the eighty-acre tract, which was the last conveyed, would have been first liable, as between the several vendees of the mortgagors, to the payment of the mortgage, without any stipulation by the purchaser thereof with reference to the payment of the same.   How far the successive agreements of McShirley, Caylor, and Trick may have had the effect to add to or change this rule, we need not enquire.

It is not shown that the appellees were under any legal obligation to pay the amount which they allege they have paid, or secured to be paid, to Caldwell, or that they really have paid any amount to him.   It is alleged, "which sum the said plaintiffs or legatees of said Birt, being his widow and children, were compelled to and have paid, or secured to be paid, to said Caldwell by virtue of the warranty of the title aforesaid."   Without stopping to inquire whether this allegation shows a payment of the amount, or only a promise to pay the same, it seems to us that the plaintiffs do not show that they were under any legal obligation to pay the amount.   The facts stated, that is, that they were legatees of the covenantor, and his widow and children, did not impose upon them any obligations to pay the debts of the deceased. Assuming that the widow and children would have been liable, had it been shown that assets had descended to them, it is not shown that such is the fact.   The statement that they were legatees might be true, if they were named in the will as such, although they never received any legacy, and it does not follow, because they are the widow and children, that assets descended to them in any amount.   Indeed, the statement that they were legatees implies that there was a will, and that the estate may all have been disposed of by the will.   That the plaintiffs had paid off the debt of the estate of their ancestors, growing out of this breach of his covenant, without showing that they were under some legal obligation to do so, can give them no right of action to recover from the defendants the amount so paid, nor can they enforce the same against the said eighty acres of land.

in the hands of the defendants.   This objection extends also to that part of the complaint which seeks to reach and control the sum of money in the hands of the Auditor of State. The complaint impliedly concedes that the plaintiffs cannot recover, without showing that they were legally bound, or their property liable, for the payment of the amount to Caldwell.   We think they do not sufficiently show this fact.

There is another ground on which it is insisted the complaint is bad, and that is, that Hosbrook was an innocent purchaser for value, and that, therefore, the title which he conveyed to the eighty acres to Shockley would be good in Shockley, although Shockley, as alleged, had notice of the fact that McShirley, Caylor, and Trick had successively agreed to pay off the college fund mortgage.   We can not see that Hosbrook, whether he had notice or not of the agreements by McShirley, Caylor, and Trick to pay the mortgage under which he purchased, could be at all affected by it.   These successive agreements were all made after the execution of the college fund mortgage, under which Hosbrook purchased, and could not possibly affect his title to the property.   They were subsequent and collateral to the mortgage, and in no sense any part of it.   The sale under the mortgage not only cut off the rights of the mortgagor, but also the rights of all those who claim under him.   It is alleged in the complaint, that Shockley "redeemed said land from said Hosbrook and took a quitclaim deed for the same for the sum of one thousand dollars, the said land at the time being of the value of thirty-five hundred dollars, he, the said Shockley, then and there representing to the said Hosbrook that he was purchasing the said land in the interest of the parties secured by the mortgage aforesaid," etc.   It is difficult to say what the pleader intended to charge here. The transaction is spoken of as a redemption, and also as a purchase by Shockley, and there was a quitclaim deed executed.   The time for redeeming the land from the sale to Hosbrook had passed.   It could not have been a redemption.   We think it must be held to have been a purchase.

Viewing it as such, we do not see the force of the allegation that it was represented by Shockley to Hosbrook as being for the benefit of the persons secured by the mortgage, nor do we see how the plaintiffs can claim the benefit of the purchase. · It seems to us that, so far as anything appears, Shockley is entitled to hold the eighty acres by virtue of his purchase from Hosbrook, as against any claim set up by the plaintiffs. If Hosbrook was an innocent purchaser for a valuable consideration, he could convey a good title, notwithstanding the purchaser from him might have had notice of an equity. If we are right in this view, the eighty-acres of land held by Shockley cannot be made liable to pay any part of the money paid by the plaintiffs to Caldwell, if their claim was otherwise unobjectionable.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrer to the complaint, and grant leave to amend, if desired.