No. 15,259.

THE AURORA NATIONAL BANK OF AURORA *v.* BLACK
ET AL.

CORPORATION.—*Lien.*— *Wages of Employees.*—*Insolvent Corporation.*—*Transfer of Property.*— *What is " Property."*—*To What Property Lien First Attaches.*— *Notice.*—A corporation went into the hands of a receiver on the 19th of May, 1888. It had been hopelessly insolvent for more than thirty days prior to that time. On the 5th of May the corporation entered into a written contract for the purchase of a large quantity of scrap-iron, to be delivered within thirty days after the date of the contract. On the day before the appointment of the receiver the corporation sold and assigned said contract to the appellant. The iron was delivered to the appellant and sold by him.

*Held,* that the contract for the delivery of the iron was " property " within the meaning of section 1285, R. S. 1881, and that the employees of the insolvent corporation, having fully complied with the statutory requirements (sections 5286 and 5287, R. S. 1881), acquired a lien thereon for their unpaid wages.

*Held,* also, that the corporation could not avoid the lien given by statute by transferring its property before the notice of the intention to hold a lien was filed in the recorder's office.

*Held,* also, that those dealing with insolvent corporations must take notice that the wages of employees are a lien upon their property, and that the title acquired by purchase or otherwise from such a corporation is subject to such lien.

*Held,* also, that the contract for the delivery of the scrap-iron being the last property transferred by the insolvent corporation, the same was subject to the payment of the liens held by the employees before resort could be had to property transferred at an earlier date.

From the Dearborn Circuit Court.

*H. D. McMullen* and *W. R. Johnston,* for appellant.

*G. M. Roberts* and *C. W. Stapp,* for appellees.

COFFEY, J.—On the 19th day of May, 1888, the business of Cobb's Iron and Nail Company, a corporation organized under the laws of the State of Indiana, was suspended by the action of its creditors, and its assets went into the hands of a receiver. It had been hopelessly insolvent for more than thirty days prior to such suspension. At the time its assets went

into the hands of the receiver it was largely indebted to its employees, who took steps to acquire a statutory lien on all the property of the corporation. On the 28th day of May, 1888, the employees brought suit in the Dearborn Circuit Court to enforce their liens against the property, making the appellant and others, who claimed an interest in such property, parties thereto. Judgment was rendered on the respective claims of the employees, and the same were declared, by proper decree, to be preferred liens, and ordered to be paid by the receiver out of the first money received by him.

It appears by the special finding of facts in the cause that, on the 5th day of May, 1888, the corporation entered into a written contract with the Bradford Iron and Metal Company, by which it purchased and paid for two hundred and fifty tons of scrap-iron at the agreed price of $5,125. At the time of such purchase the Bradford Iron and Metal Company did not have the scrap-iron on hand, but the same was to be delivered at the city of Aurora, Indiana, within thirty days after the date of the contract. On the 18th day of May, the day before the appointment of the receiver, Cobb's Iron and Nail Company sold and assigned the contract for the scrap-iron to the appellant for the agreed price of $5,000, $3,000 of which was paid in cash and the remaining $2,000 was paid by the surrender of notes which the appellant held against the iron and nail company. The Bradford Iron and Metal Company complied with the contract by delivering the scrap-iron to the appellant. The appellant sold the scrap-iron for the sum of $3,500, and received the money therefor, and still retains it.

The court found that the contract for the scrap-iron was of the value of $3,500, and stated as a conclusion of law that the liens of the employees of the corporation attached to such contract, and decreed that the appellant pay into court the amount received by it as the proceeds of the sale of the scrap-iron.

To this conclusion of law the appellant excepted.

The question presented necessarily involves the construction of our statutes enacted for the benefit of employees.

Section 5286, R. S. 1881, is as follows: "The employees of any corporation doing business in this State, whether organized under the laws of this State or otherwise, shall be, and they are hereby entitled to have and hold a first and prior lien upon the corporate property of any corporation, and the earnings thereof, for all work and labor done and performed by such employees for such corporation, from the date of their employment by such corporation; which lien shall lie prior to any and all liens created or acquired subsequent to the date of the employment of such employees by such corporation, except as in this act provided."

Section 5287 provides that any employee wishing to acquire such lien upon the corporate property of such corporation, or the earnings thereof, shall file in the recorder's office of the county where such corporation is located or doing business, notice of his intention to hold a lien upon such property and earnings for the amount of his claim, setting forth the date of such employment, the name of the corporation, and the amount of such claim. When recorded, this section provides that the lien so created shall relate to the time when such employee was employed, or to any subsequent date during such employment, at the election of the employee, and shall have priority over all liens suffered or created after such employment, except the liens of other employees, over which there shall be no such priority.

Section 5290 provides that in all proceedings commenced under this act the defendant may file a written undertaking, with surety to be approved by the court, to the effect that it will pay the judgments that may be recovered and costs, and thereby release its property from the liens acquired.

It is not disputed that the employees of Cobb's Iron and Nail Company complied, strictly, with the provisions of section 5287, supra, in the matter of acquiring their liens,

but it is insisted by the appellant that, inasmuch as the title to the iron, purchased under the contract assigned to it, never vested in the nail company, there was no property to which the lien could attach; while, on the other hand, it is contended by the appellees that the contract for the delivery of the iron was property, and that, as such, it was subject to the lien for wages due from the company to its employees.

It was the purpose of the Legislature in enacting this statute to secure to employees of corporations an efficient remedy for the collection of money due them for wages.

Such statutes are not only constitutional, but they are to be liberally construed with a view of rendering effectual the purpose of the statute. *Warren* v. *Sohn,* 112 Ind. 213; *Bass* v. *Doerman,* 112 Ind. 390; *Pendergast* v. *Yandes,* 124 Ind. 159.

It was the intention of the Legislature, we think, that employees should have a lien upon all the property owned by the corporation from which wages was due them at the time notice of a lien was filed in the recorder's office. Was the contract in controversy " property " within the meaning of the statute, and did the appellant take it free from the lien, having procured the assignment before notice of the intention to hold a lien was filed?

Section 1285, R. S. 1881, provides that the phrase " personal property " shall include goods, chattels, evidences of debt and things in action, and that the word " property " shall include personal and real property.

That the contract for the delivery of the scrap iron therein mentioned was "property" seems to be abundantly established by the authorities. Bouvier Law Dic., title " Property," p. 387; *Dunning* v. *Rogers,* 69 Ind. 272.

We are of the opinion that the corporation could not avoid the lien given by statute by transferring its property before the notice of the intention to hold a lien was filed in the recorder's office. Such a construction of the statute would

place it in the power of corporations to defeat the purpose
the Legislature had in view, as they might, upon approach-
ing insolvency, defeat such liens by selling and transferring
all their property. Those dealing with such corporations
must know the law and must take notice that the wages of
employees is a lien upon their property, and that the title
acquired by purchase or otherwise from a corporation is sub-
ject to such lien.

We are, therefore, of opinion that the contract in contro-
versy was properly within the meaning of the statute under
consideration, and that the employees of Cobb's Iron and
Nail Company acquired a lien thereon for their unpaid
wages.

A controversy arose among the numerous owners of the
property formerly owned by the corporation and persons
holding liens thereon, as to what property should be first
exhausted in payment of the liens due from the company to
the employees.

It appears from the special finding of facts that the con-
tract for the delivery of the scrap-iron, transferred to the
appellant, was the property last transferred by Cobb's Iron
and Nail Company. The court stated as a conclusion of law
that this contract should be subject to the payment of the
liens held by the employees before resort was had to prop-
erty transferred at an earlier date.

In this we do not think the court erred. Where several
parcels of property are encumbered by a lien to secure a debt
due from the owner, and such owner disposes of the prop-
erty in parcels to different persons at different periods, the
property last disposed of must be exhausted in payment of
the debt before resorting to the other parcels. There is no
contribution in such cases. *Savings Bank* v. *Creswell*, 10
Otto, 630 ; *Britton* v. *Updike*, 3 N. J. Eq. 125 ; *Gouverneur*
v. *Lynch*, 2 Paige, 300 ; *Hahn* v. *Behrman*, 73 Ind. 120 ;
*Houston* v. *Houston*, 67 Ind. 276 ; *Aiken* v. *Bruen*, 21 Ind.

137 ; *McCullum* v. *Turpie*, 32 Ind. 146 ; *Henderson* v. *Truitt*, 95 Ind. 309 ; *Higham* v. *Harris*, 108 Ind. 246.

In such cases the purchasers must answer in the order in which they have purchased, the last purchaser first and the first purchaser last. The same rule applies to subsequent liens placed upon the property in good faith.

In this case the liens for wages due the employees of the corporation covered all the property owned by such corporation, and was a common burden. All who acquired title to such property, or liens upon it, acquired such title or lien subject to the prior and superior liens of those to whom wages were due. For the payment of such superior lien the property last owned by the corporation should be first exhausted, and so on back, in the inverse order of its disposition by the owner at the time the superior lien attached. This was the view entertained by the circuit court, and it follows that its decree, based upon this view of the law, was not erroneous.

Judgment affirmed.

Filed Dec. 8, 1891.