Jenkins v. Craig.

## JENKINS ET AL. v. CRAIG.

[No. 2,555.   Filed Dec. 22, 1898.   Rehearing denied April 7, 1899.]

CONTRIBUTION.—*Deeds.*—*Judgments.*—Where the owner of two lots subject to a judgment lien conveys one of them by general warranty deed, a subsequent purchaser of the other lot acquires, as against the purchaser of the former, only the rights which his grantor retained after the first conveyance, and he cannot call upon the prior purchaser for contribution.   *p. 201.*

DEEDS.—*Judgments.*— *Priorities.*— *Contribution.*— *Breach of Warranty.*—An owner of two lots subject to a judgment sold lot A to defendant, and afterwards sold lot B to plaintiffs.   Defendant by warranty deed conveyed lot A to plaintiffs, and plaintiffs by warranty deed sold and conveyed lot B to M.   An execution was issued on the judgment, and M. still being the owner of lot B, directed the execution against lot A and purchased the same at sheriff's sale in satisfaction of the judgment, plaintiffs having full knowledge of the sale.   *Held*, in an action by plaintiffs against defendant for breach of warranty, that plaintiffs having the two lots subject to the one lien, and having conveyed lot B by warranty deed, they reversed the priority of liens on the lots, and put it out of the power of defendant to intervene and procure the exhaustion of lot B before resort to lot A.   *pp. 192-204.*

From the Hamilton Circuit Court.   *Reversed.*

*Christian & Christian*, for appellants.

*F. E. Gavin, C. F. Coffin* and *T. P. Davis*, for appellee.

BLACK, C. J.—This was an action brought by the appellants to recover damages for breach of covenants in a warranty deed, whereby the appellee conveyed to the appellants certain real estate in the city of Noblesville.   The court overruled the demurrer of the appellants to the second paragraph of the appellee's answer.   The first paragraph of answer was withdrawn, and, the appellants standing by their demurrer and refusing to plead further, judgment was rendered for the appellee.   The overruling of the demurrer is assigned as error.

The essential facts discussed by counsel, upon which the court determined the cause in favor of the appellee, as

gathered from the complaint and answer, were substantially as follows:    One Alexander Castor was the owner of two parcels of real estate in said city, which, for convenience, we will designate as "Lot A" and "Lot B," both being subject to the general lien of a judgment obtained in 1889 against said Castor by one William Vestal, when, in August, 1889, said Castor sold and conveyed lot A to the appellee, who immediately went into possession thereof.    It does not appear whether or not this conveyance was by warranty deed; nor is the character of the conveyance stated. In January, 1890, Castor sold and conveyed to the appellants lot B, and they immediately went into possession thereof. In October, 1890, the appellee sold and by warranty deed conveyed said lot A to the appellants, at and for the sum of $500.    In January, 1893, the appellants sold, and by warranty deed conveyed, to one David F. Moss said lot B.    In June, 1895, an execution was issued on said judgment, said Moss still being the owner, through said warranty deed of the appellants of said lot B, and the appellants the owners of said lot A.    Prior to the issuing of said execution, said Moss called the attention of the appellants to the fact that said judgment was a lien on the real estate conveyed to him by warranty deed executed by them, and that under the terms of said deed they were liable for the payment of said judgment.    The appellants failed and refused to take any steps for the satisfaction of said judgment, or to secure the release of the lien thereof on said real estate, and thereupon the execution was issued at the instance of said Moss.    In July, 1895, the sheriff levied the execution on said lots A and B; and in the same month, under the direction of said Moss, the sheriff sold said lot A to said Moss for $66.82, in satisfaction of the judgment, the appellants having full knowledge of said sale.    The attention of the appellee was not called to the judgment prior to the sale, of which he had no knowledge.    Said Moss received the sheriff's certificate of sale, and, the real estate so

sold not having been redeemed, the sheriff, at the expiration of the year for redemption, issued a sheriff's deed therefor to said Moss, who thereunder took possession of said lot A, and evicted the appellants therefrom. Said lot B at all the times mentioned, was of the value of $200 or more, an amount largely in excess of said judgment, including interest and costs. Said lot B was not offered for sale on said execution.

The complaint stated a good cause of action in favor of the appellants upon the covenants of the warranty deed of the appellee, but it is claimed that the additional facts presented by the answer constituted an equitable defense. The rule which it is sought to apply is spoken of in *Bank of Commerce* v. *Nat. Bank*, 150 Ind. 588, 593, as "the universally established equitable rule that property subject to a lien, if sold by the debtor in parcels, is subject to resale, for the discharge of the lien, in the inverse order of its alienation." For applications of this rule and statements thereof, see *Day* v. *Patterson*, 18 Ind. 114; *Aiken* v. *Bruen*, 21 Ind. 137; *Alsop* v. *Hutchings*, 25 Ind. 347; *McCullom* v. *Turpie*, 32 Ind. 146; *McShirley* v. *Birt*, 44 Ind. 382; *Sidener* v. *White*, 46 Ind. 588; *Houston* v. *Houston*, 67 Ind. 276; *Hahn* v. *Behrman*, 73 Ind. 120; *Henderson* v. *Truitt*, 95 Ind. 309; *Merritt* v. *Richey*, 97 Ind. 236; *Richey* v. *Merritt*, 108 Ind. 347; *Aurora Nat. Bank* v. *Black*, 129 Ind. 595; *Jennings* v. *Moon*, 135 Ind. 168. Under some of the statements of the doctrine in these cases, it would seem from the general form of the rule announced that the grantee of the parcel first sold, in seeking to assert the equitable right against the purchasers of parcels subsequently conveyed by the same grantor need not, in pleading, state the character of the conveyance to such first grantee, but may simply allege, as in the case before us, that his parcel was "sold and conveyed" to him. "If a mortgagor conveys the mortgaged land in separate parcels by warranty deeds, and afterwards pays the mortgage debt, he is not entitled to contribution from the pur-

chasers, because he pays merely his own debt, which his covenants bound him to pay." 2 Jones Mort. section 1090. "If a mortgagor sells portions of the mortgaged premises in different parcels at different times by warranty deed, that which he retains is in equity primarily liable as against all but the mortgagee for the whole debt, and such grantee is not required to contribute." 2 Jones Mort. 1091.

The foundation of the doctrine that, where the owners of the several parcels subject to a mortgage hold under the mortgagor by titles successive in order of time, the first grantee has an equitable priority as against the later grantee, so that the parcel last conveyed by the mortgagor is primarily chargeable with the whole mortgage debt, is said to be found in the equities which subsist between the mortgagor and such first grantee of a part of the mortgaged premises. 3 Pom. Eq. section 1224. It is there said: "Whenever the mortgagor conveys a portion of the land 'subject to' a mortgage by a warranty deed, and retains the residue of the land in his own hands, that portion of the land retained by the mortgagor becomes, as between himself and his grantee at all events, the fund primarily liable for the whole mortgage debt. The form of the deed shows that the grantee not only assumed payment of no portion of the mortgage debt, but did not buy his parcel even *subject* to the mortgage; and the entire burden was therefore left upon the portion of the land remaining in the ownership of the mortgagor." It is further said: "The inference is natural, even if not necessary, that the same burden follows this portion, when subsequently conveyed by the mortgagor to a second grantee." In the next section the learned author says: "The doctrine stated in the foregoing paragraph is one of purely equitable origin, and is not an absolute rule of law, and if the peculiar equitable reasons on which it rests are wanting, it ceases to operate. * * * The doctrine in its full scope and operation primarily depends upon the relation subsisting between the mortgagor, or other owner of the entire mortgaged

premises, and his grantee of a parcel of the land. This relation, in turn, results from the form of the conveyance, which, being a warranty deed, or equivalent to a warranty, shows conclusively an intention between the two that the grantor is to assume the whole burden of the encumbrance as a charge upon *his own* parcel, while the grantee is to take and hold his portion entirely free.   *   *   *   When the deeds to the successive grantees are not warranty or equivalent thereto, but simply purport to convey the mortgagor's right, title and interest in the parcel, the intention is clear that the grantees respectively assume their portions of the burdens. Their several parcels are all liable ratably and not in the inverse order."

In *Guion* v. *Knapp*, 6 Paige (N. Y.), 35, it is said:   "The principle of charging different parcels of the mortgaged premises, which have been sold at different times, subsequent to the mortgage, in the inverse order of their alienation, is not always confined to the original alienations by the mortgagor who is personally liable for the payment of the debt. The principle is equally applicable to several conveyances at different times, by the grantee of the whole or a part of the mortgaged premises, where he conveys with warranty," etc. See, also, *Aiken* v. *Gale*, 37 N. H. 501; *Welch* v. *Beers*, 90 Mass. (8 Allen) 151; *Gill* v. *Lyon*, 1 Johns. Ch. 446; *Skeel* v. *Spraker*, 8 Paige 182.

In *Carpenter* v. *Koons*, 20 Pa. St. 222, it was said by the court:   "A man who purchases part of a tract covered by a mortgage, buying the title out and out, clear of encumbrances and paying a full price for it, has a plain right to insist that his vendor shall allow the remainder of the mortgaged premises to be taken in satisfaction of the mortgage debt before the part sold is resorted to. This being the right of the vendee against the mortgagor himself, the latter cannot put the former in a worse condition by selling the remainder of the land to another person. The second purchaser sits in the seat of his grantor, and must pay the whole value of what

Jenkins *v.* Craig.

he bought toward the extinguishment of the mortgage, before he can call on the first purchaser to pay anything.  The first sale having thrown the whole burden on the part reserved, it cannot be thrown back by the second sale.  In other words, the second purchaser takes the land he buys subject to all the liabilities under which the grantor held it. But if the rule is to cease when the reason of it ceases, it cannot extend to a case where the first sale was made subject to a mortgage; and that is the condition of the present one. The defendant's deed is older than his adversary's, but it conveys him nothing but the equity of redemption.   *   *   * There is a wide and palpable difference between one who buys land subject to a mortgage, and has a reduction in the price equal to the amount of the lien, and another who pays its full value and stipulates for a title clear of encumbrances. Such a distinction is anything in the world but a 'theoretical subtlety.' "

In *Day* v. *Patterson*, 18 Ind. 114, it was said: "It is probably a rule of law that where a mortgagor sells the equity of redemption in the lands mortgaged, at different times, to different purchasers, the first of such purchasers may compel the mortgagee to exhaust the portions later sold before selling his."   The case was not disposed of upon this question. It was made to proceed upon the agreement of the second purchaser with his grantor, the mortgagor, that such second purchaser would pay off as a part of the purchase money of his parcel the mortgage which was a lien upon it and also upon the parcel first sold by the mortgagor, being an agreement that the second purchaser would assume the entire mortgage, which was treated by the Supreme Court as a promise made for the benefit of the grantee of the first parcel sold.   It was said of Day the first grantee, that his grantors, the mortgagors, "were bound to satisfy the encumbrance upon the land sold to him.  In a sale to Patterson," the second purchaser, "they, in effect, leave with him the amount of money

necessary to discharge that encumbrance, as the considera-
tion of his agreement to pay it off for the benefit of Day."

In *McShirley* v. *Birt*, 44 Ind. 382, it was said that under
the rule the eighty-acre tract, which was the last conveyed,
would have been the first liable, as between the several ven-
dees of the mortgagors, to the payment of the mortgage,
without any stipulation by the purchasers of said eighty
acres to pay the mortgage debt.    It was shown that the prior
conveyance of thirty-nine acres of the mortgaged property
was by warranty deed, and that in the subsequent sale and
conveyance of the remaining eighty acres to another grantee
it was stipulated in the deed that the grantee therein should
pay the mortgage as a part of the consideration for the
eighty acres.

In *Merrilt* v. *Richey*, 97 Ind. 236, the court said: "It is
well settled that when a judgment is a lien upon several
parcels of land which are afterwards sold to various persons
at different times, a court of equity will compel the sale of
such land in the inverse order of its alienation. * * * This
being the rule in equity, it follows as a sequence that, as be-
tween the first and any subsequent purchaser, it becomes
*the duty* of the latter to pay the judgment by allowing the
land purchased by him to be first applied to its payment, and
when such subsequent purchaser, upon whose land the writ
issued upon the judgment has been levied, either pays the
judgment or takes an assignment of the same to protect his
land, such judgment must thereafter, as against a prior pur-
chaser, be deemed extinguished if the land levied upon was
of sufficient value to pay it."

In *Henderson* v. *Truitt*, 95 Ind. 309, it was said: "Where
a mortgagor sells a part of the mortgaged land by warranty
deed, such deed exempts the land conveyed by it from contri-
bution in favor of the mortgagor, or any one else claiming
the remaining mortgaged lands under him, with notice of the
conveyance.    2 Jones Mort., sections 1090, 1091.    As has
been seen, the purchase by Henderson of a part of the mort-

gaged lands was nearly a year and a half subsequent to the time at which John McClamrock received a warranty deed for the part purchased by him. Henderson, therefore, became the purchaser. of that portion of the mortgaged lands which remained in Jones after he and his wife had conveyed. and warranted a part to McClamrock. Consequently, applying the doctrine, deduced from the authorities as above, to the facts, as we find them in the complaint, the lands purchased by Henderson became primarily liable for the payment of the note sued on by Binford."

In *Jennings* v. *Moon*, 135 Ind. 168, it was said: "When * * * Freeman and wife sold the undivided one-half of lot 8, by warranty deed, to appellees, the obligation to pay the mechanic's liens on all said lots remained upon Freeman and wife, and any property owned by them was primarily liable for the payment of the liens. When, therefore, * * Freeman and wife sold the remaining undivided one-half of said lot to appellants, they conveyed to appellants only the title which they then possessed, which title was coupled with a primary liability to pay the liens on the whole lot."

In *Clowes* v. *Dickinson*, 5 Johns, 235, which is cited in *Sidener* v. *White*, 46 Ind. 588, and which is a leading case upon the doctrine now under examination, it will be observed in the statement of the facts that the plaintiff, the first purchaser of one of the two encumbered lots, received from his grantor a deed of conveyance in fee with covenant of warranty. In *Sidener* v. *White*, *supra*, the doctrine was applied in aid of a purchaser of personal property subject to the lien of an execution, the seller, the execution defendant, having other property, real and personal, out of which the execution might be made in full, without the sale by the sheriff of the property so sold by the execution defendant. In *Aurora Nat. Bank* v. *Black*, 129 Ind. 595, liens for wages due employes of a corporation, which covered all its property, were enforced. A certain contract for the delivery

of scrap iron, which was held to be property of the corporation, and which had been sold and assigned by the corporation, being the last property transferred by it, was held to be subject to the payment of the liens of the employes before resort to property transferred by the corporation at an earlier date.    It was said that all who acquired title to the property of the corporation or liens upon it, acquired such title or liens subject to the prior and superior liens of those to whom wages were due, and that, for the payment of such superior liens, the property last owned by the corporation should be first exhausted, etc.    The sale of a chattel in possession of the seller carries with it an implied warranty of title. *Marshall* v. *Duke*, 51 Ind. 62; *Bash* v. *Young*, 2 Ind. App. 297; *Thurston* v. *Spratt*, 52 Me. 202.

The warranty of title will be implied, whatever may be the character of the personal property which is offered for sale.    The doctrine extends not only to all kinds of goods, but also to all kinds of incorporeal personalty, such as choses in action, both negotiable and non-negotiable notes, bonds, and open accounts, corporate stock and patent rights.    See Tiedeman Sales, section 185.    "The warranty of title amounts to an assurance that the seller has a *free* and *perfect* title.    Hence the warranty is broken by the enforcement, if not by the mere existence, of prior encumbrances, mortgages, pledges or liens."    Tiedeman Sales, section 186 and cases there cited; *Close* v. *Crossland*, 47 Minn. 500, 50 N. W. 694; *Hunt* v. *Sackett*, 31 Mich. 18.

The character of the conveyance from the judgment defendant, Castor, to the appellee, not being shown, we cannot hold the appellee's answer sufficient.    That defect in the pleading renders it insufficient on demurrer, and we need not and do not decide the question as to what would be the rights of the parties, under the situation which has accrued as shown by the pleadings, upon an additional showing of a conveyance to the appellee of some supposable particular

character. The judgment is reversed, with instruction to sustain the demurrer to the second paragraph of answer.

Wiley and Comstock, JJ., took no part in this cause.

## ON PETITION FOR REHEARING.

BLACK, C. J.—In the brief of counsel for the appellee on petition for a rehearing we are told that in the original draft of the answer it was alleged that Castor sold and conveyed to the appellee "by deed of general warranty," and that in the answer in the record the words quoted were inadvertently omitted by the stenographer or clerk; and counsel say that the averment was so made because it was a correct statement of the fact. Very properly, it is not claimed that we can treat the transcript otherwise than as a true copy of the record, or that the mistake of the copyist can be corrected on petition for a rehearing. While we adhere in all respects to our former opinion, we think it perhaps not improper, in view of this statement of counsel that we should decide the question which must inevitably come before the trial court.

When Castor conveyed lot B to the appellants, having previously conveyed lot A by deed of general warranty to the appellee, the appellants acquired as against the appellee only the rights which Castor retained after the conveyance to the appellee. The equities of the purchasers of the parcels were not equal. The subsequent purchaser could not call upon the prior purchaser for contribution. If the party primarily liable had discharged the encumbrance which rested on both lots he could not claim contribution from the party secondarily liable. *Henderson* v. *Truitt,* 95 Ind. 309; *Merritt* v. *Richey,* 97 Ind. 236; *Richey* v. *Merritt,* 108 Ind. 347; *Aurora Nat. Bank* v. *Black,* 129 Ind. 595; *Britton* v. *Updike,* 3 N. J. Eq. (2 Green), 125. When the appellants purchased lot B from the judgment defendant, they took it, chargeable with the judgment, in preference to lot A, already conveyed with warranty to the appellee, which was only bound to supply any deficiency after exhausting lot B. The

appellants took lot B with all its equitable burdens.  *Clowes* v. *Dickenson*, 5 Johns. Ch. 235; *Jennings* v. *Moon*, 135 Ind. 168; *Judson* v. *Dada*, 79 N. Y. 373.

In *McCreery* v. *Day*, 119 N. Y. 1, 23 N. E. 198, it was said: "Courts of equity often interfered by injunction to restrain proceedings at law to enforce judgments, covenants, or obligations equitably discharged by transactions of which courts of law had no cognizance.  (2 Story Eq. section 1573.) It is a necessary consequence of our changed system of procedure, that whatever formerly would have constituted a good ground in equity for restraining the enforcement of a covenant, or decreeing its discharge, will now constitute a good equitable defense to an action on the covenant itself."

It is a leading feature of our code that all matters in dispute between the plaintiff and defendant, and relating to the same subject, may be litigated and settled in one action. *Vail* v. *Jones*, 31 Ind. 467.   In this State, under our code, an equitable defense may be set up to a legal claim, and where a party is seeking to enforce an asserted right under a legal form, equity will give the same protection to equitable rights that they would receive if the proceedings were under equity forms, and equity can be invoked under all circumstances where an equitable right calls for protection or enforcement.   *Troost* v. *Davis*, 31 Ind. 34.

If the judgment lien had been enforced while the appellee was the owner of lot A, and while his grantor or the appellants still owned lot B, the appellee would have been entitled to have the judgment debt paid by the sale of lot B, the value of which exceeded the amount of the debt, and the owner of lot B would not have been entitled to any contribution from the appellee.   When the appellee, by his warranty deed, conveyed lot A to the appellants, there was existing an equitable obligation upon the latter as the owners of lot B to discharge the lien upon the two lots.   The appellants were already subject to this burden before they became the owners of lot A.   The judgment was only a secondary lien on lot A,

while it was a primary lien on lot B.   The appellee's cove-
nants in his warranty deed did not cover the lien of the judg-
ment except as a secondary lien, the primary lien resting on
lot B.   As between the appellants and the judgment cred-
itor, the two lots, while owned by the appellants, were subject
alike to the lien of the judgment, yet, as between the ap-
pellants and the appellee, the judgment continued to be a
primary lien on lot B, and a secondary lien on lot A, and
the appellee continued to possess the equitable right to have
lot B exhausted before resort to lot A; that is, the appellee's
covenants only extended to loss that might be suffered by the
appellants through such a secondary resort to lot A.   The
appellants, thus owning the two lots subject to the one lien,
conveyed lot B by warranty deed to Moss.   Under the equit-
able rule mentioned in our original opinion Moss had the
right as against his immediate grantors and the judgment
creditor to have the parcel still owned by the appellants sub-
jected to sale under the judgment and exhausted before re-
sort to his parcel.   The appellants were under obligation on
their warranty deed to Moss to save him harmless from the
judgment lien.   While nothing had occurred to change the
equitable rights of the appellee, as between him and the
appellants, he had no right to claim as against Moss, that lot
A should not be first exhausted before resort to lot B.
But the appellee had been deprived of such right by the act
of the appellants in conveying to Moss the parcel, which, as
between the appellants and the appellee, was primarily liable.
By their own act and for their own advantage, the appellants
reversed the priority.   They put it out of the power of the
appellee to intervene and procure the exhaustion of lot B
before resort to lot A.   Indeed, it must be considered that
the appellants were under obligation to save Moss from the
enforcement of the lien upon lot B, and the appellee from
any loss through its enforcement on lot A if lot B was worth
more than the judgment lien.   The appellants are in the
condition, so far as the appellee is concerned, in which they

would have been if they had discharged their obligations to Moss by paying off the lien with money and retaining lot A.

The appellee was not bound to initiate any proceeding to prevent the result which accrued. He could not have prevented it by any proceeding he might have brought, and he had no interest in doing so. He is entitled to set up the equitable defense in this action. The petition for a rehearing is overruled.